Spear, J.
One principal question, and another in the alternative, are presented. Was the contract as *531 to rates within the power of the council to make, and; if not, is the defendant Company estopped now to set up as a defense that want of power? ;
The first question is answered by the statute itself. Sections 3461 and 3471, Revised Statutes, provide: :
Section 3461. “When any lands authorized to be appropriated to the use of a company are subject to the easement of a street, alley, public way or other public use, within the limits of any city or village, the. mode of use shall be such as shall be agreed upon between the municipal authorities of the city or village and the company; and if they cannot agree, or the municipal authorities unreasonably delay to enter into any agreement, the probate court of the county, in a proceeding instituted for the purpose, shall direct in what mode such telegraph line shall be constructed along such street, alley or public way, so as not to incommode the public in the use of the same; but nothing in this section shall be so construed as to authorize any municipal corporation to demand or receive any compensation for the use of a street, alley or public way, beyond what may be necessary. to restore the pavement to its former state of usefulness.”
Section 3471. “The provisions of this chapter shall apply also to any company organized to construct any line or lines of telephone; and every such company shall have the same power and be subject to the same restrictions, as are herein prescribed for magnetic telegraph companies.” • . ,
It is further answered by the case of Macklin v. Home Telephone Company, reported by the circuit court in 24 O. C. C., 446, and affirmed in this court as City of Findlay v. same Company, 70 Ohio St., 507. A telephone company gets its right to go upon *532 the streets, with its poles, wires, etc., from the state (sections 3454 to 3471-8 inclusive), and the power of the municipal authorities in the premises is to agree upon, not the right to use, hut the mode of use, and if no agreement as to mode shall be made within a reasonable time, the company may apply to the probate court, which court shall direct in what mode the line shall be constructed so as not to incommode the public in the use of the streets, etc. In other words, municipal authorities may do what the probate court may do when a proper ease is presented, and no other or different thing. One is a substitute in all respects for the other. Beyond this, the municipality is not permitted to demand or receive any compensation beyond what may be necessary to restore the streets to their former state of usefulness. In short, the right of the public to the free use of the streets, alleys, etc., is to be maintained and the general duty of the municipal authorities to keep the streets, etc., ■open, in repair and free from nuisance is to be performed. It follows that the council had no power to make an effective arrangement as to rates, and that the principal question will have to be determined against'the plaintiffs in error.
A majority of the court is of the opinion that the alternative question should, also, be determined against the plaintiffs in error. It follows from what has preceded that the municipality possessed nothing in the way of a valuable right to bestow upon the Company.' Hence the promises of the Company to do what it was not, and could not by the city be required to do, was a naked promise, without consideration. It therefore fails as a contract, and it is difficult to see how Farmer & Getz could take advantage of a nude pact to raise an estoppel, a pact *533 to ■which they were in no wise parties, or privies in the eye of the law, and against a party with whom they had no contract or other legal relátions whatever themselves. It seems reasonably clear that the petition of plaintiffs below did not state a cause of action.
Is the City’s cross-petition in error in any better situation as matter of law? It is stated that but for the proposition as to rates incorporated in the ordinance, the city would not have conferred the mode of use which it did, but would have demanded and required a mode of use less beneficial to the applicant ; that he was saved delay and the necessity of going to the probate court; that it not only conferred upon h,im a more beneficial mode of using the streets than it otherwise would, or could have been compelled to under the statute, but a mode more inconvenient to the public, so that the City parted with something and the applicant received something in the way of benefit. But this view antagonizes the proposition already determined that the City had nothing in the way of rights or special benefits to give away, or barter away. Its plain and only duty was to insist upon and secure a mode of use entirely consistent with the full beneficial use by the public at large of the streets and alleys of the municipality. It had no authority to consent to an arrangement more inconvenient to the public in order to get gain to itself or to anybody else. It had no right, upon any consideration whatever, to incommode the public in the use of the streets. Any attempt to obtain advantage to itself, by free service or otherwise, or to such portion of the public as might want to avail itself of the telephone service, was manifestly against the letter as well as the *534 spirit of the statute, and cannot in law, or in equity, constitute a predicate for an estoppel. It asks to stand upon its own illegal contract, and asks a court of equity to compel the other party to stand upon and perform it. In other words, the City asks a court of equity to decree specific performance, by mandatory injunction, of a contract which, admittedly, it had no power to make, and which the statute forbids. As it seems to a majority of the court, the proposition cannot be maintained upon any established rule known to courts of equity.
This is the court’s view of the cold law of the case. But before leaving the subject we feel impelled to express strong condemnation of the lamentable want of fair dealing shown on the part of [he defendant Company in its transactions with the municipal authorities. Of course, Thayer was a mere vehicle; the Company was and remains the power behind. If the pleadings truly state the situation the Company’s action was in a high degree reprehensible. Were there any ground which this court could regard as substantial for such action the court would take pleasure in .granting the relief asked and thus administer a deserved rebuke; but there seems none. Possibly a recognition of this phase of the case on the part of the learned and honorable counsel of record for the defendant Company may account for the absence of a brief from them in this court.
: The conclusion is that the cross-petition does not state a cause of action and that the demurrer to it was properly sustained.

Judgment affirmed.

Davis, C. J., Shauck and Summers, JJ., concur. - • ■ Price, J., dissents. ' ....